# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD BARNETT,            ) | 1:06cv0952 AWI DLB |
|                            ) | |
|                            ) | FINDINGS AND RECOMMENDATION |
|    Plaintiff,              ) | REGARDING PLAINTIFF'S SOCIAL |
|                            ) | SECURITY COMPLAINT |
| v.                         ) | |
|                            ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security,        ) | |
|                            ) | |
|                            ) | |
|    Defendant.              ) | |

## BACKGROUND

Plaintiff Ronald Barnett ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

In March 1995, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability since November 10, 1994, due to hepatitis C, disc problems and neck problems. AR 173-178. The applications were denied initially and on

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

reconsideration. AR 179-182, 185-188. Plaintiff requested a hearing before an administrative law judge ("ALJ"). After a hearing, ALJ Michael J. Haubner issued a decision denying benefits on May 28, 1997. AR 495-504. On January 27, 1999, the Appeals Council vacated the ALJ's decision and remanded the case for further consideration of Plaintiff's residual functional capacity ("RFC") and to obtain testimony from a vocational expert ("VE") in light of new medical evidence submitted after the hearing. AR 518-520. After another hearing, ALJ Haubner issued a second decision on December 30, 1999, again finding Plaintiff not disabled. AR 926-935. The Appeals Council denied Plaintiff's request for review on July 1, 2002. AR 937-939.

Plaintiff subsequently appealed ALJ Haubner's decision to this Court in case number 1:02cv5976 OWW DLB. On February 27, 2004, the Court issued Findings and Recommendation that the action be remanded. AR 943-960. The Court adopted the Findings and Recommendation on March 31, 2004, and remanded the action for (1) full consideration of Dr. Cowgill's opinion; (2) further evaluation of Plaintiff's irritable bowel syndrome ("IBS") and what effect, if any, the condition has on Plaintiff's ability to work; and (3) presentation of a complete hypothetical to the VE, if necessary.

During the pendency of Plaintiff's first action in this Court, he filed a subsequent application for supplemental security income. After a hearing, the application was granted on September 16, 2003, with benefits effective February 6, 2002. AR 1002.

Pursuant to the Court's order of remand, ALJ James Berry held a third hearing on September 1, 2005. AR 971-998. On October 17, 2005, ALJ Berry issued a decision finding Plaintiff not disabled. AR 1002-1010.

Plaintiff filed the current action on July 20, 2006.

Hearing Testimony

*November 16, 1999, Hearing*

On November 16, 1999, ALJ Haubner held a hearing in Fresno, California. Plaintiff appeared with his attorney, Richard Sigmund. VE Steven D. Koobalian also appeared and testified. AR 86.

Plaintiff testified that he was 44 years old at the time of the hearing and had completed 14 years of education as well as a graphics communication course. AR 94-95. Plaintiff testified that his past relevant work included construction, computer typesetting, golf course maintenance and work as a veterinary medical technician. AR 95-98. He last worked as a graphic artist in 1995, when he stopped due to back problems which made him unable to sit. AR 100.

At the time of the hearing, Plaintiff was wearing a wrist brace on each wrist due to bilateral carpal tunnel syndrome ("CTS"). AR 102. He testified that he could only write or draw for approximately one half hour before his hand cramps. AR 103. He also has problems with his neck and can only look down at a desk or table for about 20 minutes. AR 106.

Plaintiff testified that he last used alcohol in 1994 when he was diagnosed with hepatitis and that he has not used illicit drugs since 1987. AR 104-105. His hepatitis causes him chronic fatigue. AR 107.

Plaintiff is able to feed his chickens every day and he has a drivers license, although he hadn't driven in two weeks. AR 108-109. He lies down for about three hours in a typical eight-hour day and once a week, he stays in bed all day. AR 111-112. He also has diarrhea approximately five days per week due to his IBS. AR 113. He testified that he has only been able to lift about 10 pounds for the last three years, and prior to that, he could lift about 25 pounds. AR 116. He also suffers from depression. *Id.*

The VE testified that a hypothetical person with Plaintiff's vocational background, who could lift and carry 10 pounds frequently and 25 pounds occasionally, occasionally do left hand and finger feeling, stand or walk six hours, and occasionally stoop, kneel and crouch could perform Plaintiff's past relevant work as a computer typesetter. AR 135. He also testified that the person could perform work as a cashier and a general office clerk, both of which existed in significant numbers in California and the national economy. AR 135-137.

*September 1, 2005, Hearing*

Pursuant to this Court's order of remand, ALJ Berry held a hearing on September 1, 2005, in Fresno, California. Plaintiff appeared with his attorney, Robert Ishikawa. VE Judith Najarian also appeared and testified. AR 971.

1    Plaintiff was 50 years old at the time of the hearing.  He testified that he stopped working
2 because he had a lot of pain in his neck and couldn't move his neck.  He also injured his back.
3 AR 979.  He was diagnosed with CTS and had surgery on both wrists.  AR 980.  He still has
4 trouble grasping things with both hands.  AR 981.  He had surgery on his neck in 1998 and
5 continues to have pain and stiffness in his neck.  AR 982-983.  His pain increases when he looks
6 to his left.  AR 984.

7    Plaintiff has had back surgery, as well.  He estimated that he could sit for about 10
8 minutes before needing to "adjust" to relieve the pain.  He thought that he could stand for a total
9 of two hours per day.  AR 985.

10   Plaintiff further testified that he suffered from diarrhea when he stopped working in 1997,
11 and that he would need five or six visits to the restroom during an eight-hour period.  The visits
12 averaged 15-20 minutes each.  AR 986-987.  He continues to have diarrhea.  AR 987.

13   Plaintiff was diagnosed with hepatitis C in 1993, and the medications cause confusion.
14 AR 987.  He can't take pain medications for his back or neck because of his liver.  AR 987.  He
15 tried two courses of Interferon treatment, and each failed.  The hepatitis makes him constantly
16 tired.  In 1997, he slept for an average of six hours during the day.  AR 988.

17   On an average day between 1993 and 1997, Plaintiff testified that he would always try
18 and get up with his kids and see them off to school.  He'd have some breakfast and try to take a
19 little walk or try and pull some weeds.  He'd then go to bed for six hours and get up to deal with
20 his children.  His wife was a full-time student at the time.  AR 989.

21   For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,
22 education and past work.  This person could lift and carry 20 pounds occasionally, 10 pounds
23 frequently, and could stand, walk and sit for six hours each.  This person could occasionally
24 stoop, kneel, crouch and crawl.  The VE testified that this person could perform Plaintiff's past
25 graphic art work, as well as other unskilled light and sedentary positions.  Other jobs include
26 photocopy operator, light assembly worker and mail sorting clerk.  AR 994-996.

27   For the second hypothetical, the ALJ asked the VE to assume a person who could stand
28 for two hours maximum, walk for five to ten minutes maximum, lift and carry 10 to 15 pounds

4

rarely, and sit for one half hour. This person could not perform any of Plaintiff's past relevant work or any other work. AR 997.

In regard to the first hypothetical, Plaintiff's attorney asked the VE to assume that this person had to use the restroom six times, 15 to 20 minutes per time. The VE testified that this person could not perform work. AR 997.

Plaintiff's attorney also asked the VE to assume a person who could walk for less than one city block, sit for 20 minutes at a time and stand for no more than 20 minutes a time. This person could not perform work. AR 997.

Medical Evidence

In May 1994, Plaintiff was diagnosed with chronic hepatitis C after a liver biopsy. AR 279-280. He underwent six months of Interferon therapy, beginning in May 1994. AR 264. In June and July 1994, Ajit Arora, M.D., stated that Plaintiff was tolerating Interferon therapy rather well. Plaintiff reported that he had more energy. AR 273. However, in October 1994, Plaintiff reported feeling tired with his current dosage. AR 264. Plaintiff completed his therapy and in February 1995, Dr. Arora reported that Plaintiff was asymptomatic.

John R. Adler, M.D., performed a neurosurgical evaluation of Plaintiff in November 1995, and found only subjective evidence of neck pain with no neurological signs of spinal cord impingement, either clinically or by MRI. AR 384. Dr. Adler did not feel that Plaintiff was a surgical candidate. Because hepatitis C prevented Plaintiff from taking pain medications, Dr. Adler thought he might benefit from a TENS unit. AR 384, 468.

In December 1995, Nancy Ascher, M.D., evaluated Plaintiff for a liver transplant program, but noted that Plaintiff had conserved liver function so it seemed too early for a transplant. She stated that his enzymes had only a mild response to Interferon therapy. AR 385.

An August 19, 1996, liver biopsy showed an increase in inflammatory activity as well as an increase in fibrosis when compared to the 1994 biopsy. AR 397.

In October 1996, Kenneth Somberg, M.D., Associate Medical Director of the UCSF Liver Transplantation Program, examined Plaintiff, who complained of right upper quadrant pain and mild fatigue. Dr. Somberg stated that Plaintiff's GERD symptoms had been resolved and he

was in no acute distress. Dr. Somberg indicated that Plaintiff's hepatitis C was progressive and indicated he would investigate a combined Interferon-ribavarin treatment. AR 396.

Plaintiff had carpal tunnel surgery on his right hand in February 1997, and on his left hand in March 1997. AR 438-439, 534. In June 1997, he still had left hand weakness and a nerve conduction study showed CTS of the left median nerve at the wrist. AR 637.

In August 1997, Plaintiff complained of intermittent vomiting, diarrhea and constipation, which was attributed to IBS. Plaintiff reported that he was not taking any medications and had not consumed alcohol for five years. He said he was on a juicing diet, which made him feel considerably improved. Emmet B. Keeffe, M.D., Medical Director of the Stanford liver transplant program, stated that Plaintiff was Child-Pugh Class A with no history of hepatic decompensation and good synthetic function. However, Dr. Keeffe said that Plaintiff had a high viral load and advanced bridging fibrosis. Dr. Keeffe recommended a trial of a new Interferon therapy. AR 746-748.

Plaintiff complained of constipation again in October 1997. AR 777. In November 1997, Plaintiff and his family reported diarrhea after eating at Taco Bell. AR 745. The treatment note indicates that Plaintiff's diarrhea was persistent. AR 745.

In January 1998, Plaintiff underwent a posterior laminectomoy due to severe C3-4 facet hypertrophy and narrowing of the neuroformina. AR 575, 598, 601.

A March 13, 1998, examination of Plaintiff's neck revealed decreased range of motion in forward flexion. AR 586. Straight leg raising resulted in left buttock pain. *Id.* James Doty, M.D., diagnosed herniated nucleus pulposus, L5, and lumbar radiculopathy, L5, left, not responsive to conservative management. AR 587. Dr. Doty performed an L5-S1 diskectomy in July 1998. AR 780-781. A December 1998, MRI showed herniated disc impingements at L5-S1. AR 773-775.

Plaintiff returned to Dr. Keeffe on October 21, 1998, and complained of constipation and abdominal pain. Dr. Keeffe noted Plaintiff's bilateral CTS, his recent cervical and lumbar spine surgery, and his chronic hepatitis C. He explained that the first priority was to attempt to improve his constipation. Dr. Keeffe suggested that Plaintiff take a tablespoon of bulk agent

twice daily, drink at least 2 quarts of fluid per day, exercise, and increase his dietary intake.  AR 743-744.

Plaintiff underwent a re-do of the L5-S1 left hemilaminectomy and diskectomy on January 12, 1999, due to worsening symptoms of left leg pain.  AR 759-760.

On March 18, 1999, Daniel H. Kim, M.D., noted that Plaintiff's significant radiating left leg pain was much improved and he was able to ambulate, but had some residual numbness.  AR 752.  He was prescribed Oxycontin for pain management and he subsequently complained of constipation.  AR 662, 852, 870.

On April 24, 1999, Norman Linder, M.D., performed a comprehensive neurologic examination.  AR 670-674.  In addition to neck, back and hand pain, Plaintiff reported nausea and constipation while on Oxycontin.  AR 671.  Objectively, Plaintiff had normal gait and decreased range of motion in the lumbar spine secondary to pain.  He had complaints of pain with internal and external rotation of the left hip, negative straight leg raises, normal cranial nerve examination, normal strength bilateral upper and lower extremities except for mildly decreased strength in the bilateral hands, and normal and symmetrical deep tendon reflexes in the bilateral upper and lower extremities.  Dr. Linder opined that Plaintiff could frequently lift 10-15 pounds, up to 25 pounds occasionally, stand/walk continuously up to two hours at a time for a total of six hours in an eight-hour day and sit continuously up to two hours at a time for a total of six hours in an eight-hour day.  Plaintiff could occasionally stoop, kneel, couch, crawl and feel with the left hand.  AR 670-674.

On June 4, 1999, Plaintiff was referred to a licensed mental health counselor at the Crisis Management Response Team of Fresno County Human Services System for suicidal ideation, decrease in functioning due to medical health issues resulting in depression, anxiety, and difficulty managing and coping.  AR 822.  He was discharged on July 4, 1999, and referred to the Sanger/Reedley Clinic for supportive intervention and follow-up. AR 822.

Due to the continuation of Plaintiff's severe constipation, on August 2, 1999, he underwent a colonoscopy.  AR 880.  The colonoscopy showed stools in the cecum and internal hemorrhoids.  AR 880.

Plaintiff was started on combination Interferon and ribavirin therapy in September 1999. AR 882.

On September 22, 1999, Roberto P. Cabugao, M.D., diagnosed "major depression, recurrent, non-psychotic, in remission" and alcohol dependance and polysubstance abuse/dependence "in full sustained remission." He prescribed Celexa. AR 893-896.

In an October 28, 1999, letter, Dr. Kim explained that he has treated Plaintiff for his back impairments. Dr. Kim informed Plaintiff's attorney that "concerning his lumbar surgery he is medically stationary wherein he is getting neither worse nor significantly better at this point." AR 891. He did not believe Plaintiff could return to "labor intensive work" but that he could be considered for vocational training, if this was "possible for him." AR 891. He stated that Plaintiff's overall prognosis was difficult to predict given the multiple spinal surgeries and his medical diseases. AR 891.

In a letter dated November 4, 1999, Plaintiff's treating physician, Steven C. Cowgill, M.D., categorized Plaintiff's medical problems as upper extremity pain due to bilateral CTS, upper extremity pain and neck pain secondary to cervical arthritis, back pain with sciatica, chronic hepatitis C infection, recurrent abdominal pain, chronic pain (neck, lumbar spine and carpal tunnel areas), and depression. AR 885-888. After discussing Plaintiff's medical conditions and reviewing the evidence, Dr. Cowgill opined that due to these "severe limitations and chronic conditions[,]" Plaintiff would not be able to hold gainful employment. AR 888.

ALJ's Findings

The ALJ first explained that because Plaintiff's subsequent application was granted and he was awarded benefits effective February 6, 2002, the time period at issue was limited to January 10, 1994, through February 6, 2002. AR 1002. During that period, ALJ Berry determined that Plaintiff had the severe impairments of hepatitis C and degenerative disc disease. AR 1003. As to Plaintiff's IBS, the ALJ found that it had only minimal, if any, effect on his ability to work and was therefore "non-severe." AR 1003. Plaintiff retained the RFC to perform light work. He could occasionally lift up to 20 pounds, 10 pounds frequently, sit, stand and walk

for six hours in an eight hour day, and occasionally stoop, crouch, kneel and crawl. AR 1003. Based on the testimony of the VE, the ALJ found that Plaintiff could perform his past work as a graphic artist, as well as other jobs existing in significant numbers in the national economy. AR 1003.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (hepatitis C and degenerative disc disease) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; but (4) retains the RFC to perform his past relevant work as a graphic artist; or, alternatively, (5) can perform a substantial number of jobs in the national economy. AR 1008-1009.

Plaintiff argues that the ALJ (1) failed to analyze his IBS; and (2) did not properly assess the treating physicians' opinions.

## **DISCUSSION**

A.   Plaintiff's IBS

Citing this Court's prior order of remand, Plaintiff argues that the ALJ ignored the Court's direction to include his IBS in the sequential evaluation. Specifically, he argues that this Court "decided the severity issue regarding plaintiff's irritable bowel syndrome when it stated, 'The ALJ did not properly assess plaintiff's irritable bowel syndrome and erred by finding this condition non-severe.'" Opening Brief, at 6. In the alternative, Plaintiff argues that the non-severity finding was not supported by the record.

In this Court's prior decision, the Court set forth the prior ALJ's finding that because there was no medical evidence to document the amount of time Plaintiff claimed he spent in the restroom, he was "constrained to find it to be a 'non-severe' impairment." Feb. 27, 2004, Order, at 14-15. The Court then explained:

> The ALJ did not properly assess plaintiff's irritable bowel syndrome and erred by finding this condition "non-severe." Dr. Cowgill diagnosed this condition (AR 890) and there are documented complaints of constipation in the record. AR 719, 743, 880. Thus, there is sufficient evidence of this condition such that even if the

10

> ALJ was unable to confirm plaintiff's allegations as to the frequency of diarrhea, at the very least, the ALJ should have proceeded to evaluate the effect of the condition on plaintiff's ability to work. The vocational expert indicated that a person who had to spend two out of eight hours in the bathroom would not be able to perform plaintiff's past relevant work or other work. AR 140. Although the frequency of the diarrhea may be unclear, the condition itself should have been considered more closely by the ALJ. Therefore, on remand the ALJ should further evaluate plaintiff's irritable bowel syndrome and what effect if any, the condition has on plaintiff's ability to work. If necessary, the ALJ should obtain further medical information regarding this condition.

*Id.* at 15.

Contrary to Plaintiff's interpretation, the Court did not decide the step two severity issue. Instead, the Court found the ALJ's analysis at step two to be deficient because he overlooked the evidence in the medical record. On remand, the Court instructed the ALJ to "further evaluate plaintiff's irritable bowel syndrome and what effect *if any*, the condition has on plaintiff's ability to work." *Id.* (emphasis added). ALJ Berry analyzed the medical evidence in his decision pursuant to the instructions of the Court:

> In evaluating the effects of the claimant's irritable bowel syndrome, substantial weight is given to the records from the Selma District Hospital and Clinic, which show that the claimant's first documented complaint of diarrhea was in November 1997 (Exhibit 51). Thereafter the record through 1999 shows intermittent rather than consistent complaints of diarrhea, with more frequent discussion of constipation secondary to the substantial narcotic medications prescribed the claimant (Exhibits 67, pp. 13-17; 73, pp. 3-38). Although treating records through February 2002 show a diagnosis of irritable bowel syndrome, they also show that the claimant was prescribed Reglan, a medication to decrease nausea and gastric statis. (Subsequent File, Exhibit 8F, p. 27; *Davis Drug Guide, 7th Edition,* pp. 634-635). These records support the finding that the claimant's irritable bowel syndrome is non-severe.

AR 1007.

Alternatively, Plaintiff contends that the evidence does not support a finding that his IBS was not a severe impairment. The Court agrees. A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step two if the medical evidence establishes only a slight abnormality or a

combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities. SSR 96-3p.

As the ALJ noted, the evidence includes numerous citations to IBS, beginning in August 1997. AR 746, 845, 847. There are also repeated instances in which Plaintiff complained of, and was treated for, constipation. AR 671, 743, 746, 777, 847, 852. There are also references to bouts of diarrhea. While the parties argue over what symptoms constitute IBS and the ALJ seems to embrace a similar distinction between constipation and diarrhea, such an analysis is not necessary given the repeated diagnoses in the record. Questioning the diagnosis based on whether Plaintiff suffered more constipation or diarrhea is improper. The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert. *Gonzalez Perez v. Sec'y Health & Human Serv.*, 812 F.2d 747, 749 ("The ALJ may not substitute his own layman's opinion for the findings and opinion of a physician."). Based upon the record, the ALJ erred in concluding that Plaintiff's IBS was "only a slight abnormality . . . which would have no more than a minimal effect" on his ability to work.

Moreover, to the extent that the ALJ concludes that Plaintiff's IBS is non-severe because Plaintiff was "prescribed Reglan, a medication to decrease nausea and gastric statis," his statement does not support a finding that Plaintiff's IBS is not severe. AR 1007. The ALJ is not only making an unspecified conclusion based on Plaintiff's medication, but he is again improperly using his medical judgment to reach an unsupported result.

The ALJ's determination that Plaintiff's IBS was not a severe impairment was not supported by substantial evidence. The appropriate remedy is discussed below.

B.  Treating Physicians' Opinions

Finally, Plaintiff argues that the ALJ improperly assessed his hepatitis C and associated fatigue because he improperly accepted the opinion of Dr. Linder, the consultive examiner, over the opinions of Drs. Cowgill and Pentschev, his treating physicians.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."'" *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6).  Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

In finding Plaintiff capable of light work, the ALJ relied mainly on the opinion of Dr. Linder. However, in doing so, the ALJ rejected the treating physicians' opinions as to Plaintiff's hepatitis C in favor of a consultive examination that was focused on Plaintiff's neck, back and hand complaints. This was improper.

Additionally, the ALJ's purported reasons for rejecting the opinions of Dr. Pentschev and Dr. Cowgill were not specific and legitimate. The ALJ's review of Plaintiff's medical record includes a detailed, multi-page history of Plaintiff's hepatitis C. AR 1003-1005. The analysis also recognizes Plaintiff's multiple complaints of fatigue, as well as Dr. Cowgill's November 1999, statement that Plaintiff "fatigu[es] after physical labor of more than one hour" and needs to lie down for thirty minutes to one hour to recover. AR 1006. The ALJ also reviewed Dr. Pentschev's October 1995 and March 1997 statements that Plaintiff could not work for more than five hours in a day due to his fatigue. AR 1004.

As to Dr. Cowgill's November 1999, opinion, the ALJ does not set forth *any* reasons for his rejection. As to Dr. Pentschev's opinions, the ALJ first explains that Plaintiff was prescribed

medications through the Stanford transplant program and there was no indication that these were ineffective. AR 1007. That Plaintiff was prescribed medication, however, does not translate into a finding that his impairment does not cause limitations. At the same time, although there is no indication that the medication was ineffective, there was certainly no indication that the medication was effective, as Plaintiff's hepatitis C became progressively worse.

The ALJ next states that in September 1995, just one month prior to his October 1995, statement that Plaintiff could not work for more than five hours, Dr. Penthschev's treatment notes indicated that although Plaintiff complained of fatigue, it was not disabling. AR 338. The ALJ continued, "[t]his suggests that his certifications, which were based primarily on his assistant's notes, were given as an accommodation to the claimant." AR 1007. Even assuming that Dr. Penthschev's note of "no disability" referred to his assessment of Plaintiff's fatigue, it does not follow that a different conclusion one month later was based solely on an accommodation to Plaintiff. Rather, given the progressive nature of Plaintiff's hepatitis C, it is far more likely that Plaintiff's condition deteriorated over the course of the month. In any event, the ALJ's unsupported conclusion is not a specific and legitimate reason for rejecting Dr. Pentschev's opinion as to Plaintiff's fatigue.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Based on the record before the Court and the procedural history of Plaintiff's action, the Court findings that no useful purpose would be served by remand. Accordingly, the Court recommends that the decision of the Commissioner be REVERSED and Plaintiff be AWARDED BENEFITS.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is not based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED, that the Commissioner's decision be REVERSED and that Plaintiff be AWARDED BENEFITS. The Court further recommends that JUDGMENT be entered for Plaintiff Ronald Barnett and against Defendant Michael J. Astrue.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 19, 2007**                   /s/ **Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE